

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| REBECCA E. COLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:04-CV-286-C |
| | § | ECF |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

# REPORT AND RECOMMENDATION

Plaintiff Rebecca Cole seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court reverse and remand the Commissioner's decision.

## I.  Standard of Review

A district court's role in reviewing Social Security appeals is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. 42 U.S.C. § 405(g); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496

(5th Cir. 1999)). The Commissioner's decision is granted great deference and will not be disturbed unless the court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## II. Discussion

Cole argues that reversal of the Commissioner's decision is warranted in part because the Administrative Law Judge (ALJ) failed to incorporate all the limitations he found Cole suffered into the hypothetical questions he posed to the vocational expert and because he failed to fully and fairly develop the administrative record. These arguments have merit.

In order to determine whether an applicant is disabled, the Commissioner considers the applicant's claim under a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920 (2005); *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the sequential inquiry, the hearing officer decides whether the applicant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment in Appendix I of the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id.* At the fifth step of the sequential evaluation process, the burden is on the Commissioner to show that, considering the claimant's residual functional capacity, age, education, and past work experience, the claimant can perform other work. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (citations omitted); *see also* 20 C.F.R.

§§ 416.920(g). In this case, the ALJ did not satisfy the burden at the fifth step of the sequential evaluation process of showing that Cole was capable of performing work that exists in significant numbers in the national economy despite her limitations.

The ALJ determined, based in part on the testimony of a medical expert,[1] that Cole was capable of performing light work activity limited by the need for jobs that would not require constant or repetitive use of her right arm and that required occasional positional changes while in the performance of job duties. (Tr. 16-17.)

The hypothetical question the ALJ posed to the vocational expert, however, did not incorporate his finding that Cole was limited to jobs that would not require constant or repetitive use of her right arm. The ALJ asked the vocational expert to assume a forty-one year-old individual with a high school education and one year of college who could do light work that involved only occasional positional changes and simple, non-complex tasks in a routine setting and whether jobs existed that such a person could perform. (Tr. 420.) In response, the vocational expert identified the jobs of folding machine feeder; photograph finisher; and microfilm mounter. (*Id.*) The ALJ noted that he accepted the vocational expert's testimony and concluded that based on Cole's vocational profile and her residual functional capacity, she could perform the work identified by the vocational expert. (Tr. 17.) The ALJ, therefore, relied on testimony that was offered in response to a hypothetical

---

[1] The medical expert specifically testified that Cole had undergone a mastectomy, which would limit the strength in her right arm. (Tr. 417-18; *see* Tr. 223-24.)

3

question that did not incorporate his finding that Cole was limited in her ability to use her right arm.

A hypothetical question posed to a vocational expert is considered defective unless (1) it reasonably incorporates the claimant's disabilities recognized by the ALJ and (2) the claimant or his representative is provided an opportunity to correct deficiencies in the question. *Boyd*, 239 F.3d at 707; *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Because the first prong of the foregoing standard was not satisfied in this case, the ALJ did not carry the Commissioner's burden of showing that Cole could perform work in the national economy despite her impairments. *See Boyd*, 239 F.3d at 708.

The Commissioner concedes that the ALJ did not include the limitation regarding the use of Cole's right arm into his hypothetical question but argues that the jobs identified by the vocational expert do not require constant or repetitive use of the right arm because they are described in the Dictionary of Occupational Titles (DOT) as requiring reaching and handling one-third to two-thirds of a workday. She further argues that because the ALJ did not find that Cole was limited in the use of her left arm, she could use her left arm to perform the duties required in the identified jobs.

As an initial point, the Commissioner has not identified legal authority that would allow a court to overlook a situation in which the ALJ relies on a response to a defective hypothetical question to ultimately conclude that a claimant is not disabled. Nothing in the Fifth Circuit precedent as set forth in *Bowling* or *Boyd* directs such an approach. To the

4

contrary, based on the holding in *Boyd*, the Commissioner does not meet the burden of showing that the claimant can perform work in the national economy when the ALJ's ultimate conclusion is based on a defective hypothetical question. *See id.* at 708.

In addition, even if the court were to assume, *arguendo*, that the jobs identified by the vocational expert require limited reaching and handling, such an assumption would not lead to a conclusion that Cole could perform the jobs. The ALJ's limitation in regard to Cole's use of her right arm was not limited to constant or repetitive reaching and handling; rather, the ALJ found that Cole was limited by the need for jobs that would not require constant or repetitive use of her right arm; thus, his restriction encompassed movements beyond reaching and handling. For example, his restriction would encompass constant or repetitive lifting; constant or repetitive manipulation object; and/or constant and repetitive pushing or pulling, all of which may be required in the jobs cited by the vocational expert.[2] Further, even assuming that the identified jobs require reaching and handling only one-third to two-thirds of the day, it does not follow from that assumption that repetitive use of the arms would not be required during that period of time – even if Cole was required to use her arms only one-third of the day, if, during that time, she was required to do constant or repetitive movements with her right arm, such work would be precluded by the ALJ's residual functional capacity

---

[2] According to the DOT the job of folding machine feeder requires a worker to feed pillowcases, towels, or other articles into a machine that folds articles for wrapping. The tasks required in the job of microfilm mounter include tasks such as inserting rolls of microfilm into a machine; filling a hopper with pre-sorted cards; and pouring specified amounts of adhesive solution into a hopper to coat cards. The job of photograph finisher requires a worker to load film into a camera; adjust exposure controls on a camera; and remove and expose film and place it into a film-developing machine. *See* Dictionary of Occupational Titles, Service Occupations, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03A.HTM (last visited on February 14, 2006).

finding in this case. Finally, it cannot be assumed that the jobs identified by the vocational expert can be performed with only a worker's left arm.

It is the court's duty to determine whether the Commissioner's decision is supported by substantial evidence and that it was reached through proper legal standards. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The Commissioner's decision was not reached through proper legal standards in this case; therefore, the court should remand this case for further administrative proceedings in order to determine, based on all of Cole's limitations, whether she is capable of performing work that exists in significant numbers in the national economy.

Because remand is required, the Commissioner should also determine whether Cole suffers from mental impairments that may impose limitations beyond those identified by the ALJ in his residual functional capacity finding. The ALJ incorporated the need for simple, non-complex tasks into the hypothetical question he posed to the vocational expert.[3] The ALJ determined that he would include this limitation into his hypothetical question after the medical expert noted indications in the record of "some oddities of behavior" while also noting that the record did not contain "enough history to make any kind of diagnosis." (Tr. 419.) The record does, however indicate that a consultative examination was necessary

---

[3] The ALJ incorporated the limitation into the hypothetical question posed to the vocational expert but did not incorporate the same into his decision. (Tr. 16-17, 419.)

to determine whether a diagnosis of a mental impairment was appropriate and the extent Cole's mental impairments, if any, would limit her ability to work.

Rosaria Taimouri, M.D., a consulting and examining physician, indicated in her report that Cole had been involved in a vehicular accident with an eighteen-wheeler truck in either 1996 or 1997 from which she sustained head trauma and that she sustained a closed head injury from being hit in the head with a sledge hammer. (Tr. 181-82.) Dr. Taimouri also reported that Cole presented with an inappropriate mood and that she would laugh and giggle sometimes while talking about sad things. (Tr. 183.) She also observed during examination that Cole had problems with memory and noted that Cole reported that she had "problems with mentation at times in that she is very forgetful and does not seem to understand. She is able to read and write, however, she has trouble with comprehension and is not able to follow directions well." (Tr. 182.) In a concluding comment, Dr. Taimouri noted that Cole seemed to have difficulty during the interview process with trying to explain her medical history and required prompting from her mother and noted that because of Cole's problems with memory, she was concerned about her capacity to be retrained (presumably for alternative work). Dr. Taimouri indicated that she was unsure as to whether Cole's memory problems were related to depression or to possibly having anoxic brain injury that may have occurred at a time when Cole was resuscitated. (Tr. 185.)

Cole's oncologist, Rodolfo E. Martinez, M.D., noted that Cole had "little understanding of her clinical status in spite of repeated review." (Tr. 368.) One month later,

he noted that "[Cole] has, I believe, a limited understanding of her disease status in spite of repeated review." (Tr. 370.)

Whether Cole suffers from mental limitations and the extent of any such limitations is not clear from the record. Because this information is not available in the record and because remand is required for further proceedings at the fifth step of the sequential disability evaluation process, on remand the Commissioner should attempt to obtain information regarding Cole's mental status from a consultative psychological examination. 20 C.F.R. §§ 416.912(f), 416.919a.

## III. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse and remand the Commissioner's decision for further administrative proceedings.

## IV. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   February 24, 2006.

_____
NANCY M. KOENIG
United States Magistrate Judge

9